**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**


**MELANIE L. HAWES,**

      **Plaintiff,**

      **v.**                                 **Case No.  5:11cv337-MP/CAS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**
**Administration,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States

Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for

judicial review of the final determination of the Commissioner of the Social Security

Administration (SSA) denying Plaintiff's applications for Disability Insurance Benefits

(DIB) under Title II and Supplemental Security Income (SSI) under Title XVI.  The

Commissioner has filed a transcript of the underlying administrative proceeding and

evidentiary record (hereinafter referred to as "R." followed by the appropriate page

number).  *See* Doc. 7.  After careful consideration of the entire Record, the undersigned recommends that the decision of the Commissioner be affirmed.

## I.  PROCEDURAL HISTORY

On May 7, 2008, Plaintiff Melanie L. Hawes filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act.  R. 12; 158-60.  Plaintiff also filed a Title XVI application for supplement security income. R. 12; 163-65.  In both applications, Plaintiff alleged disability beginning January 7, 2008.  R. 12; 158-60, 163-65.  Plaintiff's claims were denied initially on August 21, 2008, and upon reconsideration on January 6, 2009.  R. 12; 64-70, 74-79.

On March 9, 2009, Plaintiff filed a request for hearing.  R. 12; 83-84.  A hearing took place on March 30, 2011, in Dayton, Ohio, before Administrative Law Judge (ALJ) Amelia G. Lombardo.  R. 12; 25-55.  Plaintiff appeared by phone and testified during the hearing.  R. 12, 132.  Plaintiff was represented by an attorney, Frederick Woodson. R. 12.  An impartial vocational expert, Charlotta J. Ewers, also appeared and testified at the hearing.  R. 12.

On May 12, 2011, the ALJ issued a Decision finding Plaintiff has not been under a disability and denying Plaintiff's application for benefits.  R. 12-24.  Plaintiff filed a request for review.  R. 8.  On August 26, 2011, the Appeals Council denied Plaintiff's request for review.  *Id*. at 1-5.  This complaint for review followed, in which Plaintiff is represented by counsel.  Doc. 1.  The parties filed memoranda of law, Docs. 10 and 13, which have been considered along with the Record.

## II.  THE ALJ'S DECISION

In the written Decision, the ALJ indicated the issue in this case is whether

Plaintiff is disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social

Security Act.  R. 12.  The ALJ explained that "disability" is defined as "the inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment or combination of impairments that can be expected to

result in death or that has lasted or can be expected to last for a continuous period of

not less than 12 months."  *Id.*  After considering all the evidence, the ALJ concluded

Plaintiff "has not been under a disability within the meaning of the Social Security Act

from January 7, 2008, through the date of this decision."  *Id.*

In particular, the ALJ set forth the five-step sequential evaluation used for

determining whether an individual is disabled under the Social Security Act: whether the

plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or

combination of impairments that meets or medically equals one listed in the applicable

regulations; (4) can perform past relevant work; and (5) retains the ability to perform

any work in the national economy.  R. 13-14.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v);

*see also, e.g.*, Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ

found that, as to the first step, the Plaintiff has not engaged in substantial gainful activity

since January 7, 2008, the alleged onset date.  R. 14.  At the second step, concerning

whether the Plaintiff has a medically determinable impairment that is "severe" or a

combination of impairments that is "severe," the ALJ found Plantiff had severe

impairments: residual effects of remote cervical fusion, depression, anxiety, and

substance abuse.  R. 14.  The ALJ further found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15-17.

Regarding Plaintiff's ability to work, the ALJ found Plaintiff "has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: occasional overhead reaching bilaterally; occasional stooping, crouching, and climbing stairs; only simple repetitive tasks; only low stress work with no assembly line production quotas and work that is not fast paced; minimal contact with the general public."  R. 17.  As to step 4 of the sequential evaluation, the ALJ found Plaintiff unable to perform any past relevant work.  R. 22. The ALJ further found:

> 7.  The claimant was born on August 24, 1964 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.969, 416.969, and 416.969(a)).

R. 22.  In particular, with regard to Plaintiff's RFC to perform light work with some limitations, the ALJ found:

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC].  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations at the light exertion level such as mail clerk, warehouse checker, copy machine operator, and machine tender.  The ability to do light work includes the capacity to perform sedentary work as well (section 202.00(a) of Appendix 2, Subpart P, Regulations No. 4).  With the claimant's limitations, there would be approximately 15,000 such jobs at the light exertion level in the region.  Additional jobs may also exist at the sedentary exertion level.

The region that the vocational expert testified about is defined as that area of southwestern Ohio comprising the metropolitan areas of Dayton, Ohio and Cincinnati, Ohio, including the area within an approximately fifty-mile radius of Dayton, Ohio.  That region has a work force of about 1.3 million.  The work force of that region is representative of the national work force.  The jobs identified by the vocational expert exist in proportionate numbers in the national economy as well.  The information provided by the vocational expert is consistent with information contained in the *Dictionary of Occupational Titles* as published by the United States Department of Labor.

R. 23.  Accordingly, the ALJ concluded Plaintiff was not disabled: "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 23.

### III. ISSUES PRESENTED

In her appeal, Plaintiff raises four points: (1) Plaintiff is per se disabled under Medical Listing 12.04 and/or 12.06; (2) the ALJ failed to properly weigh the medical evidence; (3) the ALJ failed to properly evaluate Plaintiff's credibility; and (4) the ALJ relied upon flawed vocational expert testimony. Doc. 10 at 13, 17, 22, 25. Plaintiff requests the decision of the Commissioner be reversed and remanded for an award of benefits or, alternatively, for a new hearing. *Id*. at 26.

In response, Defendant asserts substantial evidence supports the Commissioner's decision and it should be affirmed. Doc. 13 at 5, 15. Specifically, Defendant asserts the ALJ properly evaluated Plaintiff's credibility and the record medical opinions, and properly determined Plaintiff's impairments did not meet a listing. Doc. 13 at 5-12. Further, the ALJ properly found Plaintiff could perform other work and was not disabled. Doc. 13 at 13.

### IV. STANDARD OF REVIEW

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). This court may not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips, 357 F.3d at 1240 n.8 (citations omitted).

"A 'substantial evidence' standard, however, does not permit a court to uphold the [Commissioner]'s decision by referring only to those parts of the record which support the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Id.* "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

## V.  LEGAL ANALYSIS

### (1)  Whether Plaintiff is Per Se Disabled under Medical Listing 12.04 and/or 12.06 and (2) ALJ's Evaluation of Medical Evidence

Plaintiff first argues the ALJ erred in failing to find that she satisfied a medical listing 12.04 and/or 12.06.  Doc. 10 at 13-14.  Plaintiff argues her impairments meet the requirements of these listings, according to the opinion of Mr. David Lauffenburger,

M.A., who Plaintiff was seeing for individual psychotherapy beginning in January 2009.

*Id.* at 14-17; *see* R. 662.

As Defendant points out, however, the ALJ specifically considered whether

Plaintiff met the requirements of listings 12.04 and 12.06.  *See* Doc. 13 at 10; R. 16.  In

particular, the ALJ explained the analysis:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: [1] marked restriction of activities of daily living; [2] marked difficulties in maintaining social functioning; [3] marked difficulties in maintaining concentration, persistence, or pace; or [4] repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

R. 16.  The ALJ then specifically addressed each category, finding Plaintiff has mild

restriction in [1], moderate difficulties in [2] and [3], and no episodes of decompensation

of extended duration as to [4]:

> In [1] activities of daily living, the claimant has mild restriction.  A psychologist who evaluated the claimant's functional capacity based upon the evidence of record without examining the claimant on behalf of the Bureau of Disability Determination (BDD) expressed the opinion that the claimant would have mild limitations in this functional area (Exhibit 7F).  At her psychological consultative examination, the claimant said that she mows the lawn and cares for her dog.  She resides with her mother.  She watches NASCAR races.  She bathes daily and presents as maintaining adequate hygiene standards (Exhibit 5F).  On a function report, she stated that she is job hunting, grocery shops, and cleans up after her dog.  She is able to handle her own personal care.  She vacuums.  She is able to drive.  She regularly goes to the racetrack, grocery store, boyfriends

place, and her grandson's ball games (Exhibit 3E). At the hearing, she testified that she is currently working about twenty-five hours per week.

In [2] social functioning, the claimant has moderate difficulties. The BDD psychologist expressed the opinion that the claimant would have moderate limitations in this functional area (Exhibit 7F). The claimant psychological consultative examiner conclude[d] that the claimant's mental ability to relate to others, including fellow workers and supervisors, is moderately impaired by her depression, her pain symptoms, and her sleeping difficulties. It is questionable whether she would be able to relate sufficiently to coworkers and supervisors, on any sustained basis (for two or more hours at a time), even to perform simple, repetitive tasks. She apparently is able to relate adequately to her family, and on those occasions when necessary, to store clerks within her ADL activities in order to complete basis household chores. She related adequately during her interview process, to the evaluator and other office reception staff. Because of her social withdrawal, she does not appear appropriate for jobs requiring sustained public interaction (Exhibit 5F).

With regard to [3] concentration, persistence or pace, the claimant has moderate difficulties. The BDD psychologist expressed the opinion that the claimant would have moderate limitations in this functional area (Exhibit 7F). The claimant psychological consultative examiner concluded that the claimant's mental ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks is mildly impaired. This is the result of her overall psychological condition. She demonstrated no significant problems with attention or concentration during the interview and informal assessment. Her pace and persistence were reasonable for the clinical interactions and test tasks required. However, her mental ability to withstand the stress and pressures associated with day-to-day work activity is judged as moderately impaired. She shows moderate mental limitations in the areas of relating and comprehension because of her depression, her preoccupation with her medical limitations and pain symptoms, as well as her inconsistent sleep difficulties. Her mental calculative abilities proved intact. Should benefits be granted, the claimant has the capability of managing them in her own best interest (Exhibit 5F).

As for [4] episodes of decompensation, the record does not indicate that the claimant has experienced any episodes of decompensation, which have been of extended duration. The claimant was admitted to the hospital in May 2010 following a suicide attempt by overdosing on medication. She was stabilized and she was released (Exhibit 16F).

R. 16-17.  Given these findings, the ALJ concluded the "paragraph B" criteria were not satisfied: "Because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied."  R. 17.

Plaintiff does not appear to dispute the ALJ's findings with regard to [1], as Plaintiff's argument focuses on [2], [3], and [4].  *See* Doc. 10 at 14-15.  Further, with regard to these findings, Plaintiff argues the ALJ erred in relying "solely on the opinions from the non-examining State Agency psychologist and fail[ed] to acknowledge the findings from Mr. Lauffenburger."  *Id*. at 15.  This ties into Plaintiff's second argument, that the ALJ failed to properly weigh the medical evidence.  Doc. 10 at 17.

Specifically, in the second argument, Plaintiff asserts the ALJ erred in giving "little weight" to the opinions of Mr. Lauffenburger, a treating therapist, and Dr. Jennifer Rawlins, a treating physician practicing family medicine.  Doc. 10 at 17, 20.  Defendant responds that the ALJ did not err in affording little weight to Mr. Lauffenburger's opinion because he was not an acceptable medical source or a treating source.  Doc. 13 at 8.  As to Dr. Rawlins, Defendant asserts the ALJ properly discounted her opinion because it was not consistent with the record and with the doctor's own reports.  *Id*. at 9.

In the Decision, the ALJ set forth the standards for considering a treating source's medical opinion regarding a claimant's disability:

> The ultimate conclusion as to whether an individual satisfies the statutory definition of "disability" is an issue that is reserved to the Commissioner of Social Security (Social Security Ruling 96-5p; 20 CFR 404.1527 and

416.927).  An opinion on the nature and severity of a claimant's
impairment is entitled to controlling weight, but only when the following
conditions are met: (1) the source giving the opinion is a "treating source"
as defined in the regulations; (2) the opinion is well supported by
medically acceptable clinical and laboratory diagnostic techniques; and (3)
the opinion is not inconsistent with other substantial evidence in the case
record (20 CFR 404.1527 and 416.927).

If a treating source's medical opinion is well supported and not
inconsistent with the other substantial evidence in the case record, it must
be given controlling weight.  However, controlling weight may not be given
to a treating source's medical opinion unless the opinion is well supported
by medically acceptable clinical and laboratory diagnostic techniques, and
is not inconsistent with other substantial evidence in the record (20 CFR
404.1527(d)(2) and 416.927(d)(2) and Social Security Ruling 96-2p).

A finding that a treating source's medical opinion is not entitled to
controlling weight under the above criteria does not mean that the opinion
is rejected.  It may still be entitled to deference and be adopted by the
adjudicatory (Social Security Ruling 96-2p).

In deciding whether or not to adopt the treating source's opinion in this
situation, the following factors are to be considered along with any other
appropriate factors: the examining relationship, the treatment relationship
in terms of its frequency and duration, supportability, consistency, and
specialization.  Particular attention is to be given to the consistency of the
opinion with other evidence, the qualifications of the source, and the
degree to which the source offers supporting explanations for the opinion
(20 CFR 404.1527(d) & (f) and 416.927(d) & (f); Social Security Ruling 96-
2p).

R. 20-21.  The ALJ then made the following findings:

In June 2010, Dr. Rawlins opined that the claimant would be unable to
return to work (Exhibit 22F).  This is inconsistent with the record as well as
reports from Dr. Rawlins.  Just a couple of months earlier, in February and
March 2010, Dr. Rawlins concluded that the claimant could return to work
with no restrictions (Exhibit 21F, page 59 and 79).  There is no evidence
of a significant decline in her condition.  Despite the May suicide attempt,
which had exacerbating factors, Dr. Rawlins stated that the claimant was
not suicidal in June (Exhibit 22F, page 4) and continued to prescribe
narcotic pain medication.  Furthermore, the claimant began working again
later in 2010.  Even if Dr. Rawlins' June statements were true, they would

not have been true for a twelve-month period of time.  Therefore, due to
the inconsistencies in the record and a lack of support for Dr. Rawlins's
June allegation of disability, little weight will be given to this opinion.

In August 2010, David Laffenburger [sic], M.A. stated that the claimant
was unable to sustain even low stress work (Exhibit 19F).  Mr. Laffenburg
[sic] is not an acceptable medical source or a treating source.
Furthermore, there are inconsistencies with his report.  He finds multiple
"marked" areas of limitation.  However, he assigned a GAF score of 55.
He mentions that she has difficulty leaving her home, but she currently
works twenty-five hours per week.  Additionally, he reports polysubstance
dependence, which if true, would require an analysis of whether it is
material to her condition.  Finally, the claimant's credibility is weak as
discussed above and Mr. Laffenburg [sic] may not have all the accurate
facts of the case.  Due to the inconsistencies, the lack of support, and the
missing twelve-month element discussed above, little weight will be given
to this opinion.

R. 21.

As to Mr. Lauffenburger, the record supports the ALJ's findings.  Plaintiff saw Mr.

Lauffenburger for therapy beginning in January 2009.  *See* R. 599-629, 637-62, 683-87.

Mr. Lauffenburger has a master's degree in psychology.  *See, e.g.*, R. 599.  The ALJ

found he "is not an acceptable medical source or a treating source."  R. 21.  In

challenging this finding, Plaintiff concedes that "[a]lthough Mr. Laufenburger is not an

acceptable medical source within the meaning of the Regulations (20 C.F.R.

§ 404.1512 and § 416.912; 20 C.F.R. § 404.1527(a)(2) and § 416.927(a)(2)) and

cannot be afforded controlling weight (20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2)),

his medical opinions still must be considered and weighed as a medical source within

the framework of the treating physician rule."  Doc. 10 at 17.  The ALJ also found

Mr. Lauffenburger's report contained inconsistences, however, and discounted his

opinion accordingly. R. 21. Thus, the ALJ did consider Mr. Lauffenburger's opinions and decided to give them little weight. *Id*.

In particular, on August 6, 2010, Mr. Lauffenburger completed a Psychiatric/Psychological Impairment Questionnaire. R. 689-96. Mr. Lauffenburger indicated that his diagnosis of Plaintiff's condition was generalized anxiety disorder, polysubstance dependence, and major depressive disorder. R. 689. He also indicated, among other things, Plaintiff had multiple medical problems, chronic pain, and unresolved grief issues. *Id*. Mr. Lauffenburger indicated Plaintiff currently had a Global Assessment of Functioning (GAF) score of 55, with 35 as the lowest GAF in the previous year. R. 689. He indicated Plaintiff's prognosis as "fair" and identified Plaintiff's primary symptoms as "severe anxiety, depression, sleep and appetite disturbances, isolation, low mood, crying spells, suicidal thoughts." *Id*. at 689, 691. He explained that Plaintiff "suffers from chronic physical pain and other medical conditions that exacerbate her psychological symptoms." *Id*. In rating specific mental activities, such as ability to understand, remember, and carry out instructions, and ability to complete a normal workweek without interruptions from psychologically-based symptoms, Mr. Lauffenburger marked seven activities as "moderately limited" and thirteen as "markedly limited." R. 692-94. Mr. Lauffenburger checked "yes" in response to a question asking if Plaintiff experiences "episodes of deterioration or decompensation in work or work like settings which cause him/her to withdraw from that situation and/or experience exacerbation of signs symptoms" and he explained Plaintiff "cannot tolerate stress." R. 694. He indicated Plaintiff's impairments were ongoing and

he expected they would last at least twelve months; he indicated Plaintiff was not a malingerer. *Id*. at 695. He indicated Plaintiff did not have a low IQ or reduced intellectual functioning. *Id*. He indicated Plaintiff could not tolerate even low work stress because she was "too anxious and depressed" and has "difficulty being around people." *Id*. He did not know whether Plaintiff's impairments produced "good days" and "bad days." *Id*.

The record supports the ALJ's finding that Mr. Lauffenburger's report contains inconsistencies. As Defendant points out, a GAF score of 55, falls within the range of 51 through 60, and is characterized by moderate symptoms or moderate difficulty in social, occupational, or school functioning. Doc. 13 at 8; *see* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV). As the ALJ indicated, this score, as well as the fact that Plaintiff was working 25 hours a week, is not consistent with Mr. Lauffenburger's determination that Plaintiff had marked limitations and could not tolerate even low work stress. Further, given the ALJ's assessment of Plaintiff's credibility, discussed *infra*, the ALJ did not err in finding Mr. Lauffenburger may not have had all the facts. The ALJ considered Mr. Lauffenburger's opinion but decided to give it little weight in light of these other considerations.

As to Dr. Rawlins, as quoted above, the ALJ found Dr. Rawlins opined Plaintiff would be unable to return to work. R. 21; *see* R. 801 (medical record note by Dr. Rawlins following Patient's appointment on June 9, 2010: "Ms. Hawes is not suicidal, but I have instructed her to call if the situation worsens in any way. Pt has

contracted today verbally not to overtake meds or attempt suicide. I feel this patient is

unable to work due to her depression, and her other chronic medical illnesses. If

appropriately treated, she may be able to return to the work force. Without insurance,

she will be financially unable to seek regular treatment."). The ALJ found this opinion

inconsistent with the record as well as other reports from Dr. Rawlins. R. 21. As the

ALJ explained, in February and March 2010, Dr. Rawlins had indicated Plaintiff could

return to work with no restrictions. R. 21; *see* R. 768, 788. In June 2010, however,

Dr. Rawlins indicated, "I feel this patient is unable to work due to her depression, and

her other chronic medical illnesses." R. 801. The ALJ found nothing in the record

reflects a decline in Plaintiff's condition between March 2010 and May 2010; though in

May 2010, Plaintiff was hospitalized following a suicide attempt in May 2010, and the

ALJ found this "had exacerbating factors." R. 21; *see* R. 723, 743. Dr. Rawlins noted

the next month, in June 2010, that Plaintiff was not suicidal. R. 21, 725. In July 2010,

Dr. Rawlins noted Plaintiff "is improved" and "has a job." R. 718. Dr. Rawlins continued

to prescribe narcotic pain medication and indicated she did not believe Plaintiff would

attempt another overdose. R. 21; 718, 725. Further, as the ALJ found, Plaintiff began

working again later in 2010. R. 21; *see* R. 30-31, 718. The ALJ thus concluded that

even if Dr. Rawlins' June 2010 statement regarding Plaintiff's inability to work was true

at that time, it was not true for a twelve-month period thereafter. R. 21.

Based on the foregoing, the ALJ did not err in giving little weight to the opinions

of Mr. Lauffenburger and Dr. Rawlins. *See, e.g.*, Barnhart, 405 F.3d at 1212. Given

this determination, the ALJ likewise did not err in relying on other record evidence to

find Plaintiff's mental impairments did not meet a listing. *See* R. 391-92, 407-08.

Therefore, Plaintiff's first two arguments should be rejected.

### (3) ALJ's Evaluation of Plaintiff's Credibility

In her third issue, Plaintiff argues the ALJ erred in finding she did not have a

severe impairment and in finding her allegations of disability not credible. Doc. 10 at

22-24. In the Decision, the ALJ set forth the appropriate analysis:

> In considering the claimant's symptoms, the undersigned must follow a
> two-step process in which it must first be determined whether there is an
> underlying medically determinable physical or mental impairment(s) – i.e.,
> an impairment(s) that can be shown by medically acceptable clinical and
> laboratory diagnostic techniques – that could reasonably be expected to
> produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could
> reasonably be expected to produce the claimant's pain or other symptoms
> has been shown, the undersigned must evaluate the intensity,
> persistence, and limiting effects of the claimant's symptoms to determine
> the extent to which they limit the claimant's functioning. For this purpose,
> whenever statements about the intensity, persistence, or functionality
> limiting effects of pain or other symptoms are not substantiated by
> objective medical evidence, the undersigned must make a finding on the
> credibility of the statements based on a consideration of the entire case
> record.
>
> A claimant's statements about the intensity and persistence of symptoms,
> such as pain, will not be rejected solely because the available objective
> medical evidence does not substantiate the statements. Symptoms, such
> as pain, are subjective and difficult to quantify. All of the following were,
> therefore, taken into account: any medically determinable impairment
> resulting in symptom-related functional limitations and restrictions which
> the claimant, the treating or examining physician or psychologist, or other
> persons report, which can reasonably be accepted as consistent with the
> objective medical evidence and other evidence. Factors relevant to
> assessing pain or other symptoms include:
>
> > (i) Daily activities;

(ii) The location, duration, frequency, and intensity of the pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v) Treatment, other than medication, received for relief of pain or other symptoms;

(vi) Any measures used to relieve the pain or other symptoms; and

(vii) Other factors concerning the functional limitations and restrictions due to pain or other symptoms.

Symptoms, including pain, will be found to diminish the claimant's capacity for basic work activities under certain circumstances. Such circumstances arise if the extent that the alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 CFR 404.1529, 416.929, and Social Security Ruling 96-7p).

R. 18. The ALJ then made the following findings concerning Plaintiff's allegations and

statements:

The claimant alleges that she is disabled and unable to work due to being in constant pain and unable to sleep and rest (Exhibit 2E). The claimant's statements concerning her impairments and their impact on her ability to work are inconsistent with the record as a whole and not entirely credible. The claimant is currently working approximately twenty-five hours per week and the record does not provide adequate justification as to why she would be unable to work more. As discussed above, she has an extensive list of activities of daily living, she is able to socialize to a degree, and she is able to concentrate on certain tasks. She performed substantial gainful activity for many years following her neck injury (see Exhibit 8D). At the hearing, she testified that she lives in a house alone. She sees friends quite often and her boyfriend lives next door. She runs the vacuum and cares for a dog and cat. She is able to shop for herself.

In addition to her functional capabilities, which are not representative of someone with a disabling condition, the claimant appears to have problems with prescription drug addiction. She has exhibited drug-seeking behavior (Exhibits 22F, page 12 and 18F, pages 77, 84, and 85). She told a therapist in late September 2010 that she was missing appointments because she could not leave the house, but at the same time, was going to see Dr. Rawlings regularly, who released her for work with no restrictions in February 2010. The claimant overdosed in May 2010, after being fired, on Vicodin, Methadone, and Valium. However, her doctor continued to prescribe Vicodin afterwards (Exhibit 22F, page 4), which could reasonably indicate that she was not a suicide risk. The claimant's condition would result in limitations, but they would not preclude all work activity.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 18-19.

To the extent Plaintiff asserts the ALJ erred in rejecting her testimony about her pain and limitations, the record supports the ALJ's determination. The credibility of the Plaintiff's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988).

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225. See 20 C.F.R § 404.1529 (explaining how symptoms and pain are evaluated); 20 C.F.R. § 1545(e) (regarding RFC, total limiting effects). This is

guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain.  After considering a claimant's complaints of pain, an ALJ may reject them as not credible.  *See, e.g.,* Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, as set forth in the quotations from the ALJ's Decision, the ALJ considered Plantiff's complaints of pain.  The ALJ determined, however, a number of inconsistencies existed such that the ALJ found Plaintiff's complaints not credible.

For instance, the ALJ indicated Plantiff works 25 hours a week at Wal-Mart.  The record supports this determination.  R. 30-31.  Such work is not consistent with Plaintiff's allegation of disability.  Nothing indicates Plaintiff has special accommodations in her employment.  *See* R. 30-31.  In addition, Plaintiff did not explain why she could not work more, as noted by the ALJ.  R. 19.  Work performed during any period in which a plaintiff alleges she is under a disability may demonstrate an ability to perform substantial gainful activity.  *See* 20 C.F.R. §§ 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."), 416.971 (same); *see also, e.g.*, Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's daily activities, including part-time work, cleaning house, attending church, and dining out with her boyfriend, were inconsistent with her claim of disabling pain.").

Further, the ALJ found Plaintiff had an extensive list of activities of daily living. R. 16, 19.  The record supports this determination.  She shops for groceries, prepares

her own meals, vacuums, mows the yard, and cares for her dogs and cat.  R. 19, 38,

211-12, 390.  She runs errands, attends appointments, walks in the yard, and plays with

her dogs.  R. 212.  The ALJ may properly consider such daily activities when evaluating

a claimant's subjective complaints of disabling pain and symptoms.  *See* 20 C.F.R.

§§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *see, e.g.*, Macia v. Bowen, 829 F.2d 1009, 1012

(11th Cir. 1987) ("The regulations do not, however, prevent the ALJ from considering

daily activities at the fourth step of the sequential evaluation process.").

   The ALJ also indicated Plaintiff had problems with prescription drug addiction

and "has exhibited drug-seeking behavior."  R. 19.  Substantial record evidence

supports this determination.  R. 681 (psychiatric record notes dated March 31, 2009,

documenting and describing drug dependence:  "She admits to yet minimizes her

substance dependence.  She said she was 'clean as a whistle' yet takes high doses of

Valium and narcotics.  She does not take them as prescribed according to mother."),

674 (medical nursing record note dated April 21, 2009, documenting Plaintiff's efforts to

get Valium), 722 (note by Dr. Rawlins on June 23, 2010, that doctor would not refill

prescription for Vicodin because Plaintiff should not have run out by that point), 809

(medical record note dated June 30, 2010: "PLEASE see charts notes on this patient

before refill - Patient requests that refill be put in even though chart notes724 (note by

Dr. Rawlins following Plaintiff's appointment on July 9, 2010, that Plaintiff "is not

suicidal" and "may use the vicodin sparingly" so doctor "will not give her more than 30

tabs at a time").  *See* Moore, 405 F.3d at 1213 (explaining that ALJ properly noted

claimant's "embellished and magnified pain behaviors, as well as drug-seeking manipulative tendencies").

Finally, as Defendant points out, other inconsistencies in the record support the ALJ's decision to discount Plaintiff's credibility. *See* Doc. 13 at 7. Plaintiff alleged that she became disabled in January 2008 (R. 158, 163); however, she stated to Dr. Rawlins on May 27, 2008, that she wanted to go back to work with no restrictions (R. 373). More significantly, Dr. Rawlins released Plaintiff to return to work with no restrictions on February 22, 2010. R. 19, 788. Further, a note in Dr. Rawlins' record from an appointment on July 7, 2010, after Plaintiff's suicide attempt in May 2010, indicates Plaintiff "is improved!!! and has a job." R. 718. The note further indicates "[w]ill give her 80# with for the month and she will continue her regular follow up with DCMH [Drake County Mental Health]" and "will follow with me in 3 months." *Id*. The only record dated after that from Dr. Rawlins appears to concern a temporary problem with Plaintiff's eyes, for which ointment was prescribed on August 16, 2010. R. 712.

Based on the foregoing, the ALJ set forth inconsistencies in her written Decision and the record supports the ALJ's findings in this regard. Accordingly, the ALJ did not err in discounting Plaintiff's credibility because of inconsistencies in the record, and Plaintiff's third argument should be rejected. *See* Moore, 405 F.3d at 1212; Wilson, 284 F.3d at 1225-26.

## (4) ALJ's Evaluation of Vocational Expert Testimony

In her final point, Plaintiff argues that, because the substantial evidence does not support the ALJ's mental RFC finding, and that finding formed the basis of the mental

limitations the ALJ presented to the vocational expert in the hypothetical, the expert's

response to that hypothetical does not meet the Commissioner's burden at step five, to

prove there is work Plaintiff can perform. Doc. 10 at 25. Plaintiff argues that the ALJ

should have relied instead on the answer to the alternative hypothetical posed to the

vocational expert, which incorporated Mr. Lauffenburger's findings, that such an

individual would be unable to work. *Id*.; *see* R. 51-52.

The ALJ has the responsibility for determining a claimant's RFC. *See* 20 C.F.R.

§§ 404.1546(c), 416.946(c). A claimant's RFC is what she can still do despite her

limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). It is an assessment based on

all the relevant evidence including a claimant's description of her limitations,

observations by treating and examining physicians or others, and medical records. *See*

20 C.F.R. §§ 404.1545(a), 416.945(a).

As Defendant asserts, the ALJ found that Plaintiff has the RFC to perform light

work subject to some limitations. R. 17; *see* Doc. 13 at 13. Specifically, the ALJ found

that, due to her mental impairments, Plaintiff was limited to simple repetitive tasks, low-

stress work with no assembly-line production quotas and work that is not fast-paced,

and only minimal contact with the general public. R. 17. Substantial record evidence

supports these findings. *See* R. 395 (mental RFC dated July 28, 2008, by Patricia

Semmelman, Ph.D., finding most activities "not significantly limited," three activities

"moderately limited" (carrying out detailed instructions, maintaining attention and

concentration for extended periods, and completing normal work-day and workweek

without interruptions from psychologically based symptoms and perform at consistent

pace without unreasonable number and length of rest periods), and indicating: "With reported activity level daily and symptoms of conditions [same as those found by ALJ], it is felt that claimant is capable of understanding and completing simple tasks in a low stress environment with minimal contact with the general public.").

In particular, as indicated above, Plaintiff works part-time at Wal-Mart, for approximately 25 hours per week. Plaintiff is able to maintain personal relationships, work, and live alone. R. 22, 30-31. Further, the consultative examiner and the State agency psychologists indicated Plaintiff could perform simple low-stress work with minimal interaction with the general public. R. 20; 391-92, 395, 407. This substantial record evidence supports the ALJ's determination regarding Plaintiff's RFC.

During the hearing, the ALJ asked the vocational expert to consider a hypothetical person of Plaintiff's age, education, and work experience, who could perform light work with occasional overhead reaching, stooping, crouching, and stair-climbing (restrictions concerning Plaintiff's cervical impairment) as well as simple, repetitive tasks that are low-stress with no assembly line quotas and minimal contact with the public (restrictions relating to Plaintiff's mental impairment). The vocational expert testified that such individual could perform jobs such as mail clerk, warehouse checker, copy machine operator, and machine tender. R. 50. Because the ALJ's hypothetical contained the restrictions and limitations in the RFC, the ALJ did not err in relying on the vocational expert's testimony to find that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, Plaintiff is not

disabled.  R. 23.  *See, e.g.*, <u>Phillips</u>, 357 F.3d at1240.  Accordingly, Plaintiff's fourth and final argument should be rejected.

## VI.  CONCLUSION

Considering the record as a whole, substantial evidence supports the findings of the ALJ and the ALJ correctly followed the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**DONE AND ORDERED** at Tallahassee, Florida, on February 19, 2013.


s/  Charles A. Stampelos
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE



### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**